## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KAREN MAZARKI,                        :

           **Plaintiff**          :      **CIVIL ACTION NO. 3:16-1885**

           **v.**                :      **JUDGE MANNION**

**BRIGHT HORIZONS CHILDREN'S** :
**CENTERS LLC, d/b/a**
**HILDERBRANT LEARNING**       :
**CENTERS LLC,**

                        :
           **Defendant**

### <u>MEMORANDUM</u>

Pending before the court in this age discrimination action filed by plaintiff Karen Mazarki is a motion for summary judgment filed by her former employer, defendant Bright Horizons Children's Centers LLC. (Doc. 33). Based upon the court's review of the motion and related materials, the defendant's motion will be **GRANTED**.

## I.    BACKGROUND

The plaintiff has brought the instant action under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §621, *et seq*., as well as under the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. §951, *et seq*.[1] She filed an amended complaint on February 27, 2017. (Doc. 23).

After completing discovery, the defendant filed a motion for summary

---

[1] ADEA and PHRA claims are analyzed under the same standard. *See* Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010).

judgment, pursuant to [Fed. R. Civ. P. 56](#),[2] on October 27, 2017. (Doc. 33). The motion was then briefed and a statement of material facts and responses as well as exhibits were filed.

## II.    MATERIAL FACTS

The undisputed facts, as supported by the record[3], establish that the plaintiff began working in Dallas, PA, as the Director of Employee Benefits for Hildebrandt Learning Centers, LLC ("Hildebrandt") on March 10, 2003. Hildebrandt operated approximately 40 employer sponsored child care centers and two adult care centers in the Mid-Atlantic Area. The plaintiff was the only human resources professional at the time and she was "the only one doing everything" related to her position. Specifically, her duties included preparing employee warnings, terminating employees, performing 401K audits, facilitating 401K enrollments, performing payroll functions, and responding to Equal Employment Opportunity Commission ("EEOC") inquiries.

---

[2]Since both parties state the standard of review applicable to a summary judgment motion, the court will not repeat it herein. Suffice to say that to prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact and, that the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See* [Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007)](#).

[3]The court notes that it only includes material factual statements with support in the record.

Between 2003 and June 2015, the job duties of the plaintiff largely involved employee benefits since the defendant hired other human resource professionals to handle the other tasks. During this time, the plaintiff performed her job without any complaints, discipline or adverse actions.

In 2009, some of the plaintiff's human resource job duties were given to Family and Personnel Specialist Paula Brown. The plaintiff trained Brown regarding her job duties.

In 2015, the plaintiff became the Manager of Human Resources and, she reported directly to Chief Development Officer Timothy O'Shea.

In May 2015, the defendant acquired Hildebrandt. The defendant also operates employer-sponsored child care centers, however, it is larger than Hildebrandt and it has over 700 child development centers nationwide and over 930 centers globally.

In June 2015, the plaintiff, who was born November 10, 1954, was 60 years old. As of June 2015, Brown had assumed some of the human resource functions. At this time, the plaintiff's primary duty was to oversee the administration of Hildebrandt's employee benefits, including medical, dental, vision, Health Saving Accounts ("HSA"), and 401K accounts. The plaintiff's duties also included filling out paperwork for unemployment compensation claims, tracking employees who were on leave under the Family and Medical Leave Act ("FMLA") and tracking I-9's. On a yearly basis, the plaintiff also completed EEOC compliance paperwork.

The plaintiff's duties at Hildebrandt changed as the company began to implement automated processes for its benefit programs that replaced the manual paperwork plaintiff had completed in the past. However, the plaintiff indicated that she still performed duties regarding the following tasks up to her termination: FMLA; unemployment; EEOC; HSA; Medicare; and COBRA.

O'Shea stated that plaintiff had trouble transitioning from Hildebrandt's manual systems to its automated benefit program processes. However, he never told plaintiff his belief and plaintiff had performed her job for over 12 years without any complaints, discipline or adverse actions.

After the acquisition, the defendant anticipated that many of Hildebrandt's corporate systems, including human resources and employee benefits, would be transitioned into its existing corporate structure. Also, at this time, the defendant employed approximately 122 employees in its human resource department, and 21 employees in its benefits department.

During the integration of Hildebrandt into the defendant, the defendant sent Vice President of Employee Practices and Diversity, Katherine Palmer, to Hildebrandt to interview existing employees. Palmer's chief goal was to identify the duties performed by Hildebrandt's corporate employees that could be absorbed by defendant's existing employees. Once Palmer identified employees whose duties could be absorbed, the defendant planned to implement a reduction in force ("RIF"). Palmer was responsible to decide, based on a set of criteria, how employees would be selected for the RIF.

Palmer was also responsible to identify Hildebrandt's employees who should be retained for the operation of the Hildebrandt's locations which the defendant acquired and which employees should be selected in the RIF. Palmer evaluated each employee's role with Hildebrandt, as well as their experience and the duties the employee performed that needed to be continued.

On May 19, 2015, Palmer met with plaintiff for the first time, and plaintiff told Palmer that her job was focused on employee benefits, including program administration and open enrollment. Palmer informed plaintiff that Hildebrandt employees would be fully transitioned into the defendant's existing benefits programs beginning in January 2016, and that in light of this benefits transition, she stated "we will probably need you at least until February." After this meeting, plaintiff and Palmer were "focused on" a smooth benefits transition.

Palmer also sought O'Shea's input regarding plaintiff's duties and performance, and O'Shea told Palmer that plaintiff "was not a critical member of the Hildebrandt … operational team, and that she was mainly doing administrative work associated with benefits… ." O'Shea also stated that plaintiff was "a marginal employee who had limited benefit-related responsibilities." Further, O'Shea indicated that, by June 2015, plaintiff's position "had come down to managing, administering paperwork."

After receiving O'Shea's input, the defendant concluded that plaintiff's

benefits administration duties would be wholly transitioned to its benefits department and her ancillary duties would be distributed among the remaining Hildebrandt employees.

After the RIF process was completed, the defendant retained 12 Hildebrandt employees and selected 8 employees, including plaintiff, for the RIF. The average age of the employees defendant selected for the RIF was 44.875. However, plaintiff was the oldest employee found to be eligible in the Severance Program. The average age of the employees who were retained by defendant was 44.91. However, all of the employees who were retained were younger than plaintiff except for one, the owner/COO of Hildebrandt.

Based on the stated average ages, plaintiff was asked during her deposition "[i]f it is true that the people retained were slightly older than the people not retained, don't you think that suggests that age did not motivate the [RIF] decision?" In response, plaintiff stated "I guess not." The plaintiff also agreed with the statement that "if the [defendant] wanted to discriminate against old people, then firing younger people is kind of strange way to do it."

On June 10, 2015, Palmer told plaintiff that she was being included in the RIF and that her position was going to be eliminated for efficiency and in order to avoid operational confusion because Hildebrandt's benefits programs were going to be transitioned to the defendant. Plaintiff contends she was told that she was being terminated since her position had been eliminated. The Plaintiff also asked Palmer which employees would be assuming her job

duties and Palmer indicated they were Shawna Sacharczyk and Brown. In particular, Palmer told plaintiff that Brown would temporarily perform her duties during the benefits transition, and that Sacharczyk would provide Brown with administrative support.

After the plaintiff was notified that she was being terminated, she sent an email on June 12, 2015 to Palmer and asked her for the criteria that was used to determine which employees the defendant was retaining. Plaintiff stated that she could not understand how the defendant decided to terminate her since she had a degree and several years of experience and, since some the employees who were retained did not have degrees and were hired after her. Palmer testified that the process was to determine who was best suited to carry out the remaining responsibilities in the most efficient way, and that the criteria included the individual roles, length of service, experience, job duties that needed to be carried on, qualifications, and breadth of experience. She stated that while length of service was "certainly a factor", "it wasn't the prevailing factor." Palmer also stated that a person's skill set, "being able to perform a particular function in a qualified manner as opposed to somebody that really couldn't do the job", was also considered.

Plaintiff testified in her deposition she did not believe that the defendant's proffered reason for its decision to eliminate her position was a cover up for discrimination. Plaintiff's testimony was as follows:

> Q: You are aware, are you not, that Bright Horizons said they eliminated your position for efficiency and to avoid operational

7

confusion?
A: I believe that could be correct.
Q: Do you have any reason to think that that reason is a cover up for discrimination?
A: No.

Also, on June 10, 2015, the defendant issued a document listing the ages and job titles of the employees identified as eligible to participate in the Severance Program and who were being offered consideration for a "Separation Agreement and General Release and asked to waive claims under the ADEA."

Under this program, the defendant offered the plaintiff the opportunity to earn one-month's pay as a severance. To receive her severance, plaintiff was required to train defendant's employees on the current administration of Hildebrandt's benefits. Specifically, plaintiff received a letter from the defendant dated June 10, 2015 stating that she was eligible for one month salary upon successful completion of her assignment through July 10, 2015, including the training of people on the requirements for the administration of the following: FMLA; unemployment; EEOC; HSA; Medicare; and COBRA. Plaintiff trained the employees as required to receive the severance, and thus her last day of employment with defendant was July 10, 2015.

On June 16, 2015, O'Shea sent an email to plaintiff and stated that "it is imperative that you begin to work with [Brown] to support her in transitioning your responsibilities." O'Shea stated that they only had a "finite time" to work with the plaintiff before "her employment was done." The plaintiff was required

to provide training on some of her duties to ensure a successful transition. The plaintiff met several times with Brown to review the tasks she had performed.

Since plaintiff completed the items listed in the June 10 memo, she received an email from Palmer on July 28, 2015 stating that it was determined that she had complied with the terms of the severance package, and that she would receive a severance of $4,174.

The defendant contends that it eliminated the plaintiff's position and that it was why she was terminated. The plaintiff maintains that her position was not eliminated, and that the duties of her position were simply given to three younger employees, namely, Sacharczyk, Kelsie McNamara and Brown. It is not disputed that Brown assumed some of the duties of plaintiff's position and that some of the duties were given to Sacharczyk and McNamara. Specifically, Brown assumed the handling of the administration of FMLA and unemployment as well as COBRA. Sacharczyk assisted Brown in handling the FMLA.

Plaintiff did not know who would take over her benefits related responsibilities for the defendant after her employment with ended. Further, plaintiff has never applied for another position with the defendant even though she had the opportunity to do so.

Plaintiff points out that Sacharczyk, who was 33, and McNamara, age 24, were given the duties of her position. Plaintiff also states that Brown, who

was age 45, was designated as the employee who plaintiff trained so that she would not have to train multiple employees.

Sacharczyk began working for the defendant in 2003 as a preschool teacher. In June 2015, Sacharczyk was 33 years old and a Quality Assurance Specialist for the defendant. As part of her duties, Sacharczyk traveled to Hildebrandt locations to ensure that the centers were properly maintaining their files and filling medications appropriately. After the plaintiff's employment ended, Sacharczyk took over plaintiff's FMLA duties, and she assisted Brown by maintaining a binder that tracked employees who were on FMLA leave. Plaintiff testified that she did not know if Sacharczyk was less qualified than her to complete FMLA paperwork. However, plaintiff had a lot more experience regarding the administration of the FMLA as HR Manager than Sacharczyk. Also, since Hildebrandt's FMLA related work was "very limited" after the plaintiff was terminated, by the third quarter of 2015 all of the FMLA work was handled by the defendant's benefits department.

With respect to the plaintiff's duties related to unemployment administration, Sacharczyk did "very little" unemployment administration and basically filed any paperwork from the EEOC at the direction of Brown.

Additionally, as a part of the RIF at Hildebrandt, the defendant planned to phase out Sacharczyk's position as Quality Assurance Specialist by February 29, 2016, at the latest.

In December 2015, Sacharczyk applied for an open position at the

defendant and was hired as a Recruitment Coordinator.

McNamara was also given some of the duties of the plaintiff's position. McNamara had worked at Hildebrandt since 2014 as the Payroll Administrator. McNamara oversaw all of Hildebrandt's payroll processes, and she assisted with Hildebrandt's employee benefits as Hildebrandt transitioned to an integrated payroll and employee benefits system. After the plaintiff's termination, McNamara's job title was changed to Payroll Specialist.

The defendant transitioned the responsibility of completing I-9 paperwork from the plaintiff to McNamara because it had payroll representatives complete the I-9 process as opposed to human resources professionals. In fact, the plaintiff admitted that "anyone" can do I-9 paperwork.

After the plaintiff was terminated, McNamara worked to pass along benefits and payroll information to the defendant's benefits team in order to aid the benefits and payroll transitions. During this processes, McNamara provided the defendant's benefits group with all of the information that they needed and they "took it on after that." After the benefits and payroll information had been sent to the defendant, McNamara's duties in this respect became more limited.

In April 2016, the defendant terminated McNamara, and the defendant then transitioned the following duties previously performed by the plaintiff to its employees in Watertown, Massachusetts: (1) employee benefits

administration, (2) FMLA reporting, (3) EEOC reporting and compliance, and (4) COBRA administration.

## III.   DISCUSSION

Plaintiff alleges that defendant Bright Horizons terminated her based on her age in violation of the ADEA. She alleges that Brown, Sacharczyk and McNamara, all younger employees, replaced her and were assigned her duties.

The defendant argues that it is entitled to summary judgment in this disparate treatment case because the plaintiff has not offered sufficient evidence to prove that the defendant's actions in terminating her were taken because of her age, since she admitted there was no reason to think the reason given for her termination was a pretext for discrimination.

Under the ADEA, employers are prohibited from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). "To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the 'but-for' cause of the adverse employment action." Howell v. Millersville University of Pennsylvania, 283 F.Supp.3d 309, 322 (E.D.Pa. 2017) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78, 129 S.Ct. 2343 (2009)). It is not enough for the plaintiff to show that her age was a

factor that motivated the employer's action, rather she must point to evidence that could support an inference that her age had a "determinative influence" on the decision. Goss 557 U.S. 176. This burden remains squarely with the plaintiff, who may prove her claims through direct or circumstantial evidence. Id. at 177. Thus, following *Goss*, to prove a disparate-treatment discrimination claim under the ADEA, "the evidence must be a sufficient basis for a reasonable jury to conclude that age was the determinative, but-for cause of the employee's termination." Palmer v. Britton Industries, Inc., 662 Fed.App'x 147, 151 (3d Cir. 2016).

Here, there is no direct evidence of discrimination by the defendant. The three employees of defendant who were involved with the decision to eliminate the plaintiff's position were O'Shea, Palmer and Georgia Dukakis. Plaintiff testified that she had "no idea" if either Palmer or Dukakis ever discriminated on the basis of age. Plaintiff also stated she believes O'Shea never discriminated against anyone on the basis of age, and she felt he was "fair." There is simply no evidence that the decisionmakers had a bias against older employees or that they took any action that lead plaintiff to believe that they had a bias. As such, plaintiff is proceeding on her ADEA claim based on circumstantial evidence.

"Age discrimination claims in which the plaintiff relies on circumstantial evidence proceed according to the three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Howell, 283

13

F.Supp.3d at 322-23 (citing Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)).

In *Howell, id.* at 323, the court detailed the three-part burden-shifting framework as follows:

> the plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination. Kautz v. Met–Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005). If a plaintiff establishes a prima facie case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." *Id*. (internal citations and quotations omitted). An employer need not prove, however, that the proffered reasons actually motivated the employment decision. *Id.* If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Id*.

*See also* Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

"To establish a prima facie case of age discrimination, a plaintiff must demonstrate that (1) [she] is forty years of age or older; (2) the defendant took an adverse employment action against [her]; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). "The requirement that a plaintiff establish a prima facie case of discrimination 'is not intended to be onerous.'"Andersen v. Mack Trucks, Inc.,

14

118 F.Supp.3d 723, 738 (E.D.Pa. 2015) (citation omitted). Additionally, "[w]here an employee is terminated during a reduction in force ("RIF"), the plaintiff must show 'that the employer retained a sufficiently younger similarly situated employee.'" Id. (citation omitted).

Initially, the defendant contends that the *McDonnell Douglas* analysis does not need to be conducted since the plaintiff admitted that she did not think Palmer, O'Shea, or Dukakis, the decisionmakers, were motivated by age when they decided to eliminate her position. It argues that "[the plaintiff's] failure to identify a decisionmaker who harbored an ageist bias, by itself, warrants summary judgment in [its] favor, without any further analysis." As the court in Andersen, 118 F.Supp. 3d at 738 n. 28, noted:

> A RIF differs from a decision to fire an employee under ordinary circumstances in that typically, employees are fired for poor performance. In a RIF, even qualified employees are laid off in order to reduce personnel. But even in a genuine RIF (one that is motivated, on a programmatic level, by economic concerns), individuals may not be selected for layoff on the basis of age. Thus, even in a RIF, we use the *McDonnell Douglas* framework to evaluate whether age discrimination exists. "The employer must have age-neutral reasons for deciding to lay off certain employees, and the employee can challenge these reasons as pretextual." Tomasso v. Boeing Co., 445 F.3d 702, 707 (3d Cir.2006); see also Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.1990) ("A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.").

Thus, the court will evaluate the plaintiff's age-discrimination claim under the *McDonnell Douglas* framework. *See* Boyle v. Penn Dental Medicine, 689 Fed.Appx. 140 (3d Cir. 2017) (Third Circuit evaluated plaintiff's age-

discrimination claims under *McDonnell Douglas* even though plaintiff admitted her age was not mentioned during her review and termination and, even though she had no reason to believe that the decisionmakers considered her age when it found she should be terminated).

The defendant appears to concede that the plaintiff satisfied the first three elements of her prima facie case. Regardless, the facts discussed above, show that the first three elements were indeed met. Consequently, the defendant argues that plaintiff has not established the fourth element since she failed to produce evidence that substantially younger employees were treated more favorably or evidence giving rise to an inference of age discrimination.

In this case, plaintiff argues that she has established an inference of age discrimination since she showed that all of her duties were assumed by three younger employees, McNamara, Sacharczyk and Brown, and that two of the employees were outside of the protected class. Although Brown was 45 years old, there was a 15-year age gap with the plaintiff's age and thus, Brown was sufficiently younger than the plaintiff. *See* DeCicco, 275 F.Supp.3d 546 (the fourth element of an prima facie case requires an age difference of at least five years). No doubt that the plaintiff was more experienced and had better credentials than the three younger employees who assumed her duties, and that she had been performing the duties for 12 years without any complaints or discipline. Even though "[t]here is a low bar for establishing a

prima facie case of employment discrimination", "a plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." Andersen, 118 F.Supp. 3d at 744-45 (internal citations omitted). Here, the court finds that the plaintiff has established the fourth element of her prima facie case by showing that she was replaced by sufficiently younger employees who assumed her duties and that they were treated more favorably than her since they were not included in the RIF, thus supporting an inference of discriminatory animus.

The defendant argues that even if the plaintiff has established a prima facie case, she cannot establish by a preponderance of the evidence that its proffered legitimate, non-discriminatory reasons for her termination were pretextual. The defendant argues that its evidence shows: "[it] did not retain any employee in Ms. Mazarki's position as Hildebrandt's Director of Human Resources"; "Ms. Mazarki does not know who performed her benefits-related responsibilities after her position was eliminated"; "Ms. Mazarki could not identify any single individual who took over these duties, because Bright Horizons transitioned her duties to the existing 143 Bright Horizons' human resource and employee benefits professionals located in Watertown, Massachusetts" and; "Ms. Mazarki was free to apply for a position in Bright Horizons' employee benefits department in Watertown, but she did not."

The defendant has "proffered that Ms. Mazarki was included in the

June 2015 RIF because her benefits-administration duties were wholly transitioned to Bright Horizons' benefits department and her ancillary duties were distributed among the remaining Hildebrandt employees." Significantly, the plaintiff admitted that the defendant indicated it eliminated her position "for efficiency and to avoid operational confusion", and that she did not have any reason to think that this explanation was "a cover up for discrimination."

The court finds that the defendant has met its burden since the evidence it produced would allow a finding that the plaintiff's inclusion in the RIF and her termination were actions taken for age-neutral reasons, i.e., legitimate, non-discriminatory reasons. *See* Andersen, 118 F.Supp. 3d at 747 ("In a discrimination case, the issue before the court is not the fairness of an employer's decision to terminate the plaintiff, but whether the record raises an issue of fact as to whether the decision was motivated by discriminatory animus.") (citation omitted).

Next, the court considers pretext. The Third Circuit in Smith, 589 F.3d at 689, stated that after the plaintiff satisfies the prima facie elements,

> the burden of production shifts to the employer to identify a legitimate nondiscriminatory reason for the adverse employment action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. At all times, however, the burden of persuasion rests with the plaintiff.

Thus, since the defendant has identified a legitimate non-discriminatory reason for terminating the plaintiff, the plaintiff must now prove pretext by

either discrediting its proffered reason for her termination or showing that age discrimination was more likely than not the "but for" cause of her termination.

In order to show pretext, "the employee must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a . . . determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). In order to "discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Id. at 765. Moreover, "[t]he fact that an employee disagrees with an employer's evaluation of her does not prove pretext." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds*, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.' [Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)], and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)." Id.

The plaintiff contends that she has established the defendant's reasons for her termination were pretextual. She indicates that she has established an invidious discriminatory reason caused her termination since she showed Sacharczyk assumed her duties regarding FMLA paperwork and McNamara assumed her duties for completing I-9 forms. According to the plaintiff, she also showed that Brown assumed some of her duties. She further points out that she had to train these younger employees to receive her severance of one month's salary, and that her training was imperative. However, while Sacharczyk and McNamara assumed the stated duties, they did so in addition to their regular duties with the defendant. Mere training of younger employees "is not on its own sufficient evidence of pretext." Laputka v. Pennsylvania State Univ., 2013 WL 1826379, at *10 (M.D.Pa. Apr. 30, 2013). Additionally, when the plaintiff trained the employees, the defendant had planned to phase out Sacharczyk's position by February 2016 and it eliminated McNamara's position in April 2016. Moreover, shortly after the plaintiff's termination, many of her former duties were transitioned to the defendant's existing employees in Watertown, Massachusetts.

The plaintiff also relies upon the fact that she had been employed longer than the three employees who assumed her duties and, that she was better educated and had better qualifications and experience to perform the duties of her position. However, even though the plaintiff was more qualified and experienced than the younger employees to perform her duties, her

arguments challenge the defendant's business decision and fail to connect the decision to terminate her to bias against her age. *See* Andersen, 118 F.Supp. 3d at 746-47. Thus, insofar as plaintiff disagrees with the defendant's business decision to eliminate her position and reassign her duties to less experienced and less qualified employees, this does not constitute a pretext since there is no evidence that it was motivated by her age. In fact, there is no evidence that either Sacharczyk or McNamara was not qualified or capable of performing the plaintiff's duties which they were assigned."It is not the Court's role to second-guess business decisions where there is no evidence of discriminatory animus." Id. at 747.

More compelling is the fact that the average age of the employees who were retained by the defendant was 44.91 and this is a little higher than the average age of the employees the defendant selected for the RIF, i.e., 44.875. Indeed, the plaintiff conceded that since the employees who the defendant retained were slightly older than the employees subject to the RIF, this indicates that the defendant was not motivated by age when it made the RIF decisions.

In addition to the fact that plaintiff stated she had no reason to think that the defendant's decision to eliminate her position and to terminate her was a pretext for discrimination, there is no evidence that any of the three decisionmakers (O'Shea, Palmer and Dukakis) were biased against the plaintiff based on her age. The plaintiff admitted that she is not aware that

Palmer and Dukakis have never discriminated on the basis of age. She also testified that she suspected O'Shea never discriminated against anyone based on age and that she considered him "fair."

In order to challenge her testimony about O'Shea, the plaintiff filed her affidavit after discovery as an exhibit in opposition to defendant's summary judgment motion. In it, she now avers that she "believe[s] that Timothy O'Shea, as a decision maker, participated in the decision to terminate me and discriminated against me by reason of age." The defendant contends that the plaintiff's affidavit should not be considered based on the sham affidavit doctrine.

> "A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment. A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). *Liberty Lobby* specifically recognizes the trial judge's power to grant summary judgment on disputed records. (*Id.* at 251). Therefore, if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate."

It's Intoxicating, Inc. v. Maritim Hotelgesellschft mbH, 2015 WL 1275348, at *2 (M.D. Pa. Mar. 19, 2015) (quoting Jiminez v. All-American Rathskeller, Inc. 503 F.3d 237, 253 (3d Cir. 2007)).

Thus, the sham affidavit doctrine allows the court to disregard an "affidavit that is submitted in opposition to a motion for summary judgment

when the affidavit contradicts the affiant's prior deposition testimony", Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004), if the affidavit is "flatly contradictory" to the prior testimony. Coleman v. Cerski, 2007 WL 2908266, at *5 (M.D.Pa. Oct. 4, 2007) (citation omitted). "The timing of the affidavit, whether there is a plausible explanation for the contradictory statements, and whether there is independent evidence in the record supporting the affidavit, may be considered when determining whether an affidavit is a sham." J.R. v. Lehigh Cnty., 534 Fed.App'x 104, 108 (3d Cir. 2013). Here, the court will not consider the plaintiff's affidavit based on its timing, the lack of explanation for the contradictory statement regarding O'Shea and, since there is no evidence showing that O'Shea discriminated against the plaintiff based on her age.

Further, even if the plaintiff disagrees with her supervisor's (O'Shea) assessment of her performance, including his belief that the plaintiff had difficulties transitioning to the defendant's automated processes and that she was a marginal employee with limited responsibilities, and O'Shea's opinion regarding the lack of the need for the defendant to retain the plaintiff since she basically only managed and administered paperwork, this still does not prove pretext. Billet, 940 F.2d at 825; Farzan v. Vanguard Grp., Inc., 582 Fed.Appx. 105, 108 (3d Cir. 2014). No doubt that Palmer relied upon O'Shea's assessments of the plaintiff in making the decision to include the plaintiff in the RIF. Moreover, "where an employer relies on particular criticisms for the adverse employment action, 'the issue is not whether the [

23

] criticisms of [the plaintiff] were substantiated or valid.... [T]he question is whether [the employer] believed those criticisms to be accurate and actually relied upon them.'" Carter v. Mid-Atlantic Healthcare, LLC, 228 F.Supp.3d 495, 506 (E.D.Pa. 2017) (citation omitted).

The plaintiff points to the fact that her job performance was exemplary during her employment as HR Manager from March 2003 through July 10, 2015, and that she had not been disciplined or subjected to any adverse actions. She also points out that she received raises and bonuses during her employment. Further, she states that she was the oldest employee found to be eligible to participate in the Severance Program and that all of the employees who the defendant retained were younger than her except for one.

To the extent the plaintiff relies upon her overall job performance and lack of disciplinary action against her, these were not the reasons the defendant based its decision to include her in the RIF and terminate her. In Steward v. Sears Roebuck & Co., 231 Fed.Appx. 201, 210 (3d Cir. 2007), the Third Circuit stated that "[a] plaintiff does not establish pretext by pointing to commendation of the plaintiff in categories the defendant says it did not rely upon in making the employment decision at issue", and that, "the factfinder must consider the employee's performance in the categories that the employer deemed relevant to the employment decision."(citations omitted).

The plaintiff also submitted evidence to show that Hildebrandt's Director of Finance, Rose Englehart, made statements that she was still a member

of the country club and that her house was paid off, and that Assistant to the Chief Operating Officer, Donna Delaney, stated that "at least you have your husband to take care of you." Although mentioned but not developed in her brief, the plaintiff appears to be relying upon the "cat's paw" theory to show a discriminatory animus. The "'cat's paw' [theory] is invoked when an employee with a discriminatory purpose essentially convinces a supervisor to take an adverse action against another employee." Dolan v. Penns Miller Insurance Co., 2014 WL 2047897 (M.D.Pa. May 19, 2014), affirmed 625 Fed.Appx. 91 (3d Cir. 2015) (citation omitted). Based on this theory, the plaintiff seems to allege that Englehart and Delaney somehow convinced the three decisionmakers to base their decision to terminate the plaintiff on a discriminatory motive, i.e., her age. Initially, as defendant states, "Ms. Mazarki does not, however, point to evidence Ms. Englehart or Ms. Delaney played any role in the decision to eliminate her position." Secondly, there is no evidence that Englehart and Delaney influenced the decision of Palmer, Dukakis and O'Shea to terminate the plaintiff. Third, as discussed above, there is no evidence that Palmer, Dukakis and O'Shea had any discriminatory purpose that was motivated by the plaintiff's age.

Finally, insofar as the plaintiff states that she had a brain tumor, that her medical care cost Hildebrandt a lot of money and, that the defendant was aware of her condition, as defendant points out, "Ms. Mazarki's medical condition is immaterial to this dispute over age discrimination."

25

## IV.    CONCLUSION

Based on the foregoing reasons, since the plaintiff has not demonstrated that the defendant's legitimate, non-discriminatory reasons for her termination were pretextual, the defendant is entitled to summary judgment as to the plaintiff's age discrimination claims under the ADEA and the PHRA. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: June 29, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1885-01.wpd

26